**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Dale Lee HITT, Defendant–Appellant.**

No. 92–30032.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 8, 1992.

Decided Dec. 2, 1992.

**423**

Bryan E. Lessley, Asst. Federal Public Defender, Eugene, OR, for defendant-appellant Dale Lee Hitt.

Deborah J. Dealy–Browning, Asst. U.S. Atty., Eugene, OR, for plaintiff-appellee U.S.

Before D.W. NELSON, REINHARDT and KOZINSKI, Circuit Judges.

KOZINSKI, Circuit Judge:

Dale Lee Hitt was convicted of possessing an unregistered machine gun in violation of 26 U.S.C. § 5861(d). The government alleged he had altered a semiautomatic rifle so it would discharge more than one shot per trigger pull—the defining characteristic of a machine gun. 26 U.S.C. § 5845(b). The rifle had indeed been modified in a way consistent with the government's theory, though Hitt's lawyer suggested it had been modified by its previous owner. I RT 49. Some internal parts usable for machine guns (but not themselves illegal) were found in a gun case in Hitt's room, but Hitt's lawyer suggested they too might have come from the rifle's previous owner. *Id.*

The key question, though, was whether the rifle would in fact rapid-fire. The government and Hitt each had their own experts test-fire it: In the government's test, the rifle did fire more than one shot per trigger pull, but when Hitt's expert (witnessed by two police officers) tested it, it didn't. Hitt's expert suggested the gun may have fired automatically in the government's test because of a malfunction, perhaps because the internal parts were dirty, worn or defective. In response, the government introduced a photograph of the rifle which, it argued, showed the rifle was neither dirty, worn nor defective. II RT 95.

Unfortunately, the photograph showed nothing of the gun's interior. All the jury could see was the outside, and not very well at that, as the gun occupied only a small part of the 4″ × 6″ photograph. The rest was taken up by about a dozen other weapons—nine other guns, including three that looked like assault rifles, and several knives—all belonging to Hitt's housemate. Hitt objected to admission of the photograph under Fed.R.Evid. 403, but the district court overruled his objection.[1]

I

A. Under Fed.R.Evid. 402, "[a]ll relevant evidence is admissible," except as otherwise provided. We let jurors see and hear even marginally relevant evidence, because we trust them to weigh the evidence appropriately. Nonetheless, when the probative value of the evidence is "substantially outweighed by the danger of unfair prejudice ... or misleading the jury," Fed. R.Evid. 403, the evidence must be kept out.

B. The photograph's probative value was exceedingly small. The defense theory was that the gun fired as an automatic because the *internal* parts were dirty, worn or defective. II RT 70–71. The prosecution understood this too: When the prosecutor cross-examined the defendant's expert, he asked whether there was "exceptional dirt *in*" the rifle, and whether there were "worn or dirty parts *in* that machine." *Id.* at 71–72 (emphasis added).

But the gun's external appearance reveals nothing at all about its internal state. Firearms are designed so the internal parts suffer most of the strain from the discharge. Wear, dirt and defects that afflict the internal mechanism generally have no

---

1. Hitt also argues that some of the searches conducted by the police violated the Fourth Amendment. Although we have considerable doubt about the legality of these searches, we need not reach this issue because of our disposition of Hitt's Rule 403 argument.

effect on the firearm's appearance; it's not uncommon for a gun that looks clean and in working order to misfire because of dirt or defects inside. Here there was absolutely no indication that the type of wear, dirt or defect Hitt's expert was talking about could be seen by inspecting the outside of the gun.

Moreover, even if the rifle's inside condition were somehow related to its outside appearance, it's virtually impossible to tell whether the gun is clean or dirty from the photograph, in which the rifle is seen from several feet away. The photograph might well have been excludible under Rule 402 as totally irrelevant, had a Rule 402 objection been made.

C. At the same time, the photograph was fraught with the twin dangers of unfairly prejudicing the defendant and misleading the jury. It showed a dozen nasty-looking weapons, which the jury must have assumed belonged to Hitt. The photograph looked like it was taken at Hitt's residence: The guns were laid out in an obviously residential room; the jury knew Hitt was arrested at home, I RT 23–24; the photograph was talked about in the same breath as two others identified at trial as having been taken in Hitt's bedroom, I RT 36. Moreover, there was no one else the jury could have suspected of owning the guns. Hitt's roommate, who in fact owned all the other weapons, wasn't even mentioned during Hitt's trial. Inferring that all the weapons were Hitt's wasn't just a plausible inference; it was the only plausible inference.

Once the jury was misled into thinking all the weapons were Hitt's, they might well have concluded Hitt was the sort of person who'd illegally own a machine gun, or was so dangerous he should be locked up regardless of whether or not he committed this offense. Rightly or wrongly, many people view weapons, especially guns, with fear and distrust. Like evidence of homosexuality, *see, e.g., United States v. Gillespie,* 852 F.2d 475, 478 (9th Cir.1988); *Cohn v. Papke,* 655 F.2d 191, 194 (9th Cir.1981), or of past crimes, *see, e.g., United States v. Bland,* 908 F.2d 471, 473 (9th Cir.1990), photographs of firearms

often have a visceral impact that far exceeds their probative value. *See, e.g., United States v. Green,* 648 F.2d 587, 595 (9th Cir.1981) (per curiam); *see also United States v. Peltier,* 585 F.2d 314, 327 (9th Cir.1978) (dictum), *cert. denied,* 440 U.S. 945, 99 S.Ct. 1422, 59 L.Ed.2d 634 (1979); *United States v. Robinson,* 560 F.2d 507, 513–14 (2d Cir.1977) (en banc), *cert. denied,* 435 U.S. 905, 98 S.Ct. 1451, 55 L.Ed.2d 496 (1978); *United States v. Warledo,* 557 F.2d 721, 724–26 (10th Cir.1977). The prejudice is even greater when the picture is not of one gun but of many.

But the photograph could do more than arouse irrational fears and prejudices. It could also lead the jury to draw some perfectly logical—though mistaken—inferences. Hitt's main defense was that he had the bad luck of owning a rifle that was defective or dirty, or perhaps had been modified by its previous owner. A jury that thought Hitt owned almost a dozen guns could very reasonably have viewed this argument with skepticism. The jurors could have inferred that a gun enthusiast like Hitt would be able to tell if the gun had been modified by someone else, or be able to make the modifications himself. Or they could have thought that someone that interested in guns would naturally keep them clean and in good working order. Of course, the jury shouldn't have drawn these inferences, because none of the other guns were Hitt's. Yet the inferences were entirely plausible once the jury concluded Hitt owned the whole arsenal.

■ D. The district judge has wide latitude in making Rule 403 decisions. *United States v. Kinslow,* 860 F.2d 963, 968 (9th Cir.1988), *cert. denied,* 493 U.S. 829, 110 S.Ct. 96, 107 L.Ed.2d 60 (1989). But this latitude isn't unlimited. Where the evidence is of very slight (if any) probative value, it's an abuse of discretion to admit it if there's even a modest likelihood of unfair prejudice or a small risk of misleading the jury.

The evidence here was not only highly prejudicial and at most marginally probative—it was also misleading. It's bad enough for the jury to be unduly swayed by something a defendant did; it's totally

unacceptable for it to be prejudiced by something he seems to have done but in fact did not. Admitting the photograph, with nothing at all to keep the jury from being misled—no limiting instruction, no redaction—violated Rule 403.

## II

 Having determined there was error, we must next decide whether it was harmless. There's a conflict in our circuit about the standard of review for harmless error. Some cases require that we affirm only if we can say with "fair assurance" that the error was harmless. *See, e.g., United States v. Webbe,* 755 F.2d 1387, 1389 (9th Cir.1985); *United States v. Felix-Jerez,* 667 F.2d 1297, 1304 (9th Cir. 1982). This standard seems to have the Supreme Court's blessing. *See Kotteakos v. United States,* 328 U.S. 750, 764–65, 66 S.Ct. 1239, 1247–48, 90 L.Ed. 1557 (1946). Other Ninth Circuit cases compel affirmance if it's "more probable than not" that the error was harmless. *See, e.g., United States v. Lui,* 941 F.2d 844, 848 (9th Cir. 1991); *United States v. Browne,* 829 F.2d 760, 766 (9th Cir.1987), *cert. denied,* 485 U.S. 991, 108 S.Ct. 1298, 99 L.Ed.2d 508 (1988).[2]

We needn't resolve this conflict here, though, because the error wasn't harmless under either standard. This was a close case: An expert on one side claimed the gun fired more than one shot per trigger pull; an expert on the other (corroborated by two police officers) said it didn't. The photograph may well have made the difference between acquittal and conviction. We can't say it was more probable than not that Hitt would have been convicted without the photograph. A fortiori, then, we can't say with "fair assurance" that he'd have been convicted without it.

REVERSED.

---

**2.** This isn't just wordplay: A 55% likelihood that the error was harmless qualifies as "more probable than not," but it's hardly a "fair assurance" of harmlessness. *Kotteakos* defines "fair assurance" as absence of a "grave doubt," 328 U.S. at 765, 66 S.Ct. at 1248, and a 45% chance that the defendant would have been acquitted but for the error certainly seems like a "grave doubt." While we obviously don't deal in such precise probabilities, "more probable than not" and "fair assurance" can, in some cases, lead to conflicting results.