35 F.3d 572
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ramon Martinez LOPEZ, Defendant-Appellant.
 No. 93-10755.
 United States Court of Appeals, Ninth Circuit.
 Submitted Sept. 7, 1994.*
Decided Sept. 13, 1994.
 
 Before: HALL, WIGGINS, and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Ramon Martinez Lopez appeals his conviction following jury trial for conspiracy to distribute heroin, in violation of 21 U.S.C. Secs. 846, 841(a)(1), and possessing with intent to distribute heroin in violation of 21 U.S.C. Sec. 841(a)(1). Pursuant to Anders v. California, 386 U.S. 738 (1967), Lopez's counsel filed a brief stating that he finds no meritorious issues for review, and a motion to withdraw as counsel of record. Lopez contends in his pro se supplemental brief that: (1) the district court abused its discretion by permitting proof of three heroin sales; (2) the evidence was insufficient to sustain his conviction for conspiracy; and (3) the district court should have granted a mistrial based upon the mistranslation of a witness's testimony.[1] We have jurisdiction under 28 U.S.C. Sec. 1291. We affirm the district court's judgment and grant counsel's motion to withdraw.
 
 
 3
 * Background
 
 
 4
 Drug Enforcement Administration (DEA) Agent Huerta, working with a paid informant named Avila, bought two ounces of heroin from Rios-Machado on two separate occasions in Arizona. Lopez did not supply the heroin. Lopez objected to testimony concerning these transactions. During the second sale of heroin, Huerta told Rios-Machado that he wanted two kilograms of heroin. Rios-Machado sought a supplier and found Lopez, whom he had known for a few years.
 
 
 5
 On September 10, 1992, Rios-Machado, Lopez, and Avila met at Avila's house in California. The three discussed Huerta's heroin needs, and Rios-Machado told Lopez about the two previous times that he sold heroin to Huerta. Lopez said he could supply a kilogram to Huerta, and after the meeting he delivered the heroin to Avila. Avila and Rios-Machado delivered the heroin to Huerta in Arizona on September 11, 1992. Huerta arranged a sting during this transaction whereby he displayed money in a briefcase to Rios-Machado, but then switched newspapers for the money. Also by prearranged plan, the police stopped Rios-Machado's car after he and Avila delivered the heroin to Huerta, seized the car and briefcase, and released Rios-Machado and Avila.
 
 
 6
 Lopez was angry when he found out about the lost money because Rios-Machado "had not done the things ... that he was supposed to." Lopez called Huerta a number of times after September 11, and said that he wanted to meet to discuss the possible sale of two more kilograms of heroin to help recover the loss from the previous sale. Lopez and Huerta met on October 8, 1992, and Lopez said that he lost money from the previous sale. He said that the quality of the kilogram that Rios-Machado delivered should have been better, that he had two more kilograms he would like to deliver to Huerta, and that he could supply an additional five kilograms.
 
 
 7
 While Lopez and Huerta continued to negotiate for the sale of heroin, Huerta arranged to buy a second kilogram from Rios-Machado, who acted without Lopez's help. Lopez objected to testimony concerning this sale. Rios-Machado was arrested following the sale. Huerta and Lopez talked by phone immediately after Rios-Machado's arrest. Huerta told Lopez how much he paid for the heroin, and Lopez and Huerta discussed the fact that Rios-Machado should pay some of that money to Lopez because of the previous botched deal. Lopez said that he knew Rios-Machado was in Phoenix, and asked about the quality of the heroin that Rios-Machado sold. Lopez said, "It wasn't like the other job I sent you, no?"
 
 II
 Other Heroin Sales
 
 8
 We review for abuse of discretion a district court's decision to admit evidence under Fed.R.Evid. 401 and 403. United States v. Shirley, 884 F.2d 1130, 1132 (9th Cir.1989). "We let jurors see and hear even marginally relevant evidence, because we trust them to weigh the evidence appropriately." United States v. Hitt, 981 F.2d 422, 423 (9th Cir.1992). Rule 403 bars evidence that "makes conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged." United States v. Bailleaux, 685 F.2d 1105, 1111 (9th Cir.1982).
 
 
 9
 Lopez argues that evidence of Rios-Machado's first two heroin sales to Huerta was irrelevant. We disagree. Both two-ounce sales were discussed during the California meeting between Lopez, Avila, and Rios-Machado, and may have explained why Lopez could trust Huerta enough to supply him with kilograms of heroin. During the second sale, Huerta and Rios-Machado discussed the purchase of heroin that Lopez eventually supplied. Evidence of the two sales was relevant because they were incidental to the agreement Rios-Machado and Lopez had to sell heroin to Huerta. See Hitt, 981 F.2d at 423.
 
 
 10
 Lopez also argues that evidence of Rios-Machado's last sale of a kilogram of heroin to Huerta was irrelevant. Although Lopez did not supply this heroin, Huerta and Lopez discussed the sale by phone, Lopez asked if the heroin was as good as that which he supplied, and he acknowledged that he should receive some of the proceeds of the sale to make up some of his loss from the September 11 deal. Evidence of Rios-Machado's last sale was relevant. See id.
 
 
 11
 Contrary to Lopez's claim, evidence of the three heroin sales was not unfairly prejudicial. Both the government and Lopez's counsel informed the jury several times that Lopez was not involved in the other sales, and several witnesses testified that Lopez did not supply the heroin for those sales. The evidence against Lopez was compelling. The jury was not likely misled by evidence of the three sales. See Bailleaux, 685 F.2d at 1111. We also reject as unpersuasive Lopez's claim that displaying the heroin from the other sales before the jury prejudiced them or adversely affected their verdict. The district court did not abuse its discretion by admitting evidence of other heroin sales.
 
 III
 Sufficiency of the Evidence
 
 12
 In reviewing sufficiency of the evidence, we determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. United States v. Torres-Rodriguez, 930 F.2d 1375, 1385 (9th Cir.1991). "The essential elements of a conspiracy are (1) an agreement to engage in criminal activity, (2) one or more overt acts taken to implement the agreement, and (3) the requisite intent to commit the substantive crime." United States v. Meyers, 847 F.2d 1408, 1412-13 (9th Cir.1988).
 
 
 13
 Rios-Machado recruited Lopez because he believed that Lopez could supply kilogram quantities of heroin to Huerta. Lopez, Avila, and Rios-Machado discussed the fact that Huerta needed a kilogram of heroin. Lopez said he would supply a kilogram, and he did supply the heroin that Rios-Machado later sold to Huerta. Lopez was angry about the lost money from the September 11 sale because Rios-Machado did not do what he was supposed to do, which indicates that they both understood how the deal should have proceeded. Lopez, by his actions, agreed with Rios-Machado to distribute heroin to Huerta and acted to fulfill that goal. See id. at 1413. Lopez's admissions in conversations with Huerta that he supplied the heroin, together with his act of actually supplying the heroin, show clearly his intent to distribute heroin to Huerta. See id. Although Rios-Machado testified that he and Lopez did not reach an agreement for Lopez to supply heroin, the jury evidently did not believe this. The evidence was sufficient to sustain Lopez's conviction.
 
 IV
 Mistranslation
 
 14
 We will not reverse a conviction on the basis of a court interpreter's mistranslation absent prejudice to the defendant. See United States v. Anguloa, 598 F.2d 1182, 1184 (9th Cir.1979).
 
 
 15
 The district court granted the jury's request during deliberations to have the testimony of Avila and Rios-Machado repeated. After the jury found him guilty, Lopez moved for a mistrial, contending that the court interpreter mistranslated the Spanish phrase "se dijo," which Rios-Machado said during the meeting in California between himself, Lopez, and Avila. Lopez contends that "se dijo" does not mean "we said," as translated by the interpreter, but, "it was said." The district court denied the motion for a mistrial.
 
 
 16
 Lopez does not indicate in the record where the mistranslation occurs, and we are unable to locate the phrase "we said" in the transcript of Rios-Machado's testimony. Furthermore, Lopez has not indicated how the sentence ends that begins with the words, "se dijo." On this record, it is impossible to determine if a mistranslation occurred, or whether a mistranslation gave an erroneous impression to the jury. See id. at 1185; see also United States v. Gomez, 908 F.2d 809, 811 (11th Cir.1990) (defendants have no right to flawless translations, and occasional lapses from word to word translation will not render trial fundamentally unfair), cert. denied, 498 U.S. 1035 (1991).
 
 
 17
 Counsel's motion to withdraw is GRANTED and the judgment is AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Our independent review of the record pursuant to Penson v. Ohio, 488 U.S. 75, 83 (1988), discloses no further issues for review