97 F.3d 1461
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Robbie Len BASCUE, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ronald Norman BASCUE, Defendant-Appellant.
 No. 95-30320, 95-30321.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Sept. 18, 1996.
Decided Sept. 26, 1996.
 
 Before: ALDISERT,* PREGERSON, and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 After a joint jury trial, Defendants-Appellants Ronald Norman Bascue and his son Robbie Len Bascue were convicted of transferring and possessing machine guns in violation of 18 U.S.C. § 922(o). On appeal, the Bascues claim that: (1) their convictions were improper because 18 U.S.C. § 922(o) exceeds the constitutional authority of Congress to legislate under the Commerce Clause and violates the Tenth Amendment; (2) the district court erred in denying their motion for judgment of acquittal and requested jury instructions regarding their defense of legal impossibility; (3) the district court erred in allowing the prosecution to display fifty-four machine guns and sixty-three silencers to the jury at one time; and (4) the district court abused its discretion in denying defendants a downward adjustment for acceptance of responsibility under United States Sentencing Guideline ("U.S.S.G.") § 3E1.1(a) and (b). Ronald Bascue also claims that the district court erred in ordering a six-level sentence enhancement under U.S.S.G. § 2K2.1(b)(1)(F) based on the number of machineguns involved. We have jurisdiction under 28 U.S.C. § 1291 and we affirm.
 
 
 3
 1. Constitutionality of 18 U.S.C. § 922(o).
 
 
 4
 Defendants allege that 18 U.S.C. § 922(o),[1] which prohibits transfer or possession of machine guns under most circumstances, is unconstitutional under United States v. Lopez, 514 U.S. ----, 115 S.Ct. 1624 (1995) because it exceeds Congress's power to legislate under the Commerce Clause and violates the Tenth Amendment. We review de novo the constitutionality of a statute. United States v. Sahhar, 56 F.3d 1026, 1028 (9th Cir.), cert. denied, 116 S.Ct. 400 (1995).
 
 
 5
 Defendants' argument is foreclosed by our decision in United States v. Rambo, 74 F.3d 948, 951 (9th Cir.1996), petition for cert. filed, 64 U.S.L.W. 3839 (U.S. Apr. 26, 1996) (No. 95-1976), where we held that § 922(o) "represents a permissible exercise of the authority granted to Congress under the Commerce Clause." Defendants' allegation that because they manufactured the machineguns in Oregon and sold them in Oregon, there existed no connection to interstate commerce is also foreclosed by Rambo. Id. at 952 ("By regulating the market in machineguns, including regulating intrastate machinegun possession, Congress has effectively regulated the interstate trafficking in machineguns.") Because § 922(o) lies within Congress's constitutional power to regulate interstate commerce, it cannot be said to usurp those powers constitutionally reserved to the states under the Tenth Amendment.
 
 2. Legal Impossibility
 
 6
 Defendants allege that the district court erred in denying their motion for acquittal and their jury instructions regarding legal impossibility. Subsection (2) of § 922(o) creates an exception to liability for machineguns transferred to or possessed by a government agency. One of defendants' defenses at trial was that, because the persons to whom they sold the machine guns were undercover federal agents, the sale fell into this government agency exception to prosecution and thus it was legally impossible for them to have violated the statute. We review de novo any element of statutory interpretation involved in the district court's decision. United States ex rel. Virani v. Jerry M. Lewis Truck Parts & Equip., Inc., 89 F.3d 574, 576 (9th Cir.1996).
 
 
 7
 We have previously held, in the context of revocation of a firearms dealer's license for sale of a weapon to a convicted felon, that there is no government agency exemption to liability under 18 U.S.C. § 925(a)(1).[2] Perri v. Department of the Treasury; Bureau of Alcohol, Tobacco and Firearms, 637 F.2d 1332, 1337 (1981). Perri involved the sale of firearms to an undisclosed undercover government agent acting as a strawman for the felon buying the gun. We reasoned that excusing "a willful violation of the Act ... simply because the government ultimately receives the firearm would circumvent the Act in a way Congress did not intend." Id. We then stated that if the firearms dealer "knew the purchaser was a government agent and received a statement from [a government] agency that the firearm would be used for official business, the transaction might fall within the exemption." Id.
 
 
 8
 The same reasoning applies here. Selling machineguns to an undisclosed undercover government agent rather than to a private individual makes no difference with respect to liability. Both actions are unlawful. Section 922(o)'s exemption for transfers to a government agency is intended to exempt from liability the purchase of machineguns by law enforcement officers and other government agencies for law enforcement uses.
 
 
 9
 Defendants argue that because this is a criminal case rather than a license revocation, this court should not follow Perri. We reject this argument. Section 922(o)'s government agency exemption was not meant to exempt from criminal liability sellers of unlawful firearms caught in government sting operations. The district court's denial of defendants' motion for acquittal and jury instructions regarding legal impossibility was thus correct.
 
 
 10
 3. Display of the machine guns and silencers.
 
 
 11
 Defendants allege that the district court committed prejudicial error by allowing the prosecution to display fifty-four machine guns and sixty-three silencers to the jury at one time. Defendants allege that, because they conceded in their opening statement that they made and delivered these weapons, the display of the weapons was of no probative value and great prejudicial effect. We review a district court's evidentiary rulings during trial for an abuse of discretion. United States v. Manning, 56 F.3d 1188, 1196 (9th Cir.1995).
 
 
 12
 Defendants rely primarily on United States v. Hitt, 981 F.2d 422 (9th Cir.1992) to support their argument that display of the weapons was unduly prejudicial. But Hitt is distinguishable. In Hitt, the defendant admitted owning the gun at issue and admitted that it had been altered to fire more than one shot per trigger pull. He contested, however, whether the gun in fact did fire more than one shot per trigger pull--defendant's expert witness testified that the gun might have an internal malfunction because the internal parts were dirty, worn, or defective. The prosecution then presented to the jury a photograph that included the gun at issue along with about a dozen other weapons belonging to the defendant's roommate. Id. at 423.
 
 
 13
 We held in Hitt that the trial court's admission of the photograph was improper and required reversal of Hitt's conviction. We stated that the photograph of the exterior of the gun revealed nothing about the disputed issue--whether the internal parts of the gun were dirty, worn, or defective. Moreover, the photograph's inclusion of twelve other weapons not belonging to Hitt was "fraught with the twin dangers of unfairly prejudicing the defendant and misleading the jury" because the jury must have assumed that these weapons also belonged to Hitt. Hitt, 981 F.2d at 424. We therefore found that the jury's viewing of the photograph likely prejudiced Hitt to such an extent that his conviction should be reversed. Id. at 425.
 
 
 14
 Here, both defendants objected to the display of the guns and silencers. The charges against them for manufacturing and transferring the silencers had been dismissed. The silencers were therefore irrelevant and should have been excluded. The district court abused its discretion in not doing so. Although the jury heard evidence that the defendants sold silencers along with the guns to the government, there was no reason for these silencers to be displayed because defendants were not charged with any violation of law regarding the silencers.
 
 
 15
 As to the machine guns, the government argues that their display was relevant to contested factual issues. The timing of the guns' manufacture was relevant to defendants' defenses of duress and legal impossibility. Ronald Bascue testified that he did not make the guns until after his first contact with the undercover agent. Bascue's counsel, in opening statement, stated that the guns were easy to manufacture and that anyone who had taken a high school shop class could have manufactured them. But a government witness testified that the guns were difficult to make and that the guns had been manufactured before the Bascue's first contact with the government agent. Viewing at least one gun was therefore relevant because this would help the jury form an impression of how complicated the weapons were and how difficult they were to manufacture. But the display of all the weapons together on the courtroom floor was far more prejudicial than it was of probative value. As we noted in Hitt, "[r]ightly or wrongly, many people view weapons, especially guns, with fear and distrust.... [P]hotographs of firearms have a visceral impact that far exceeds their probative value. The prejudice is even greater when the picture is not of one gun but of many. Hitt, 981 F.2d at 424 (citations omitted).
 
 
 16
 Here, the jury saw more than a photograph. It saw fifty-four machine guns and sixty-three silencers on the courtroom floor. The only reason for such a display was the visceral impact on the jury of viewing a large number of nasty-looking weapons. The district court abused its discretion in allowing this display after defendants had conceded that they had manufactured and transferred these weapons.
 
 
 17
 After we determine that a court abused its discretion in admitting evidence, we must also determine "whether we can say with 'fair assurance' that the error was harmless. Hitt at 425, United States v. Crosby, 75 F.3d 1343, 1349 (9th Cir.1996). The present case, unlike Hitt, was not a close case. Defendants claimed that § 922(o) was unconstitutional and that, even if the statute did not exceed Congress's Commerce Clause authority, it was legally impossible for them to have violated the statute because they sold the machineguns to a government undercover agent. As explained above, we reject these arguments. Defendants' other defense at trial was that they were coerced into manufacturing and selling these guns--that they had not originated the idea of selling the guns and that they believed that they would be killed if they failed to deliver the guns. But the prosecution presented extensive evidence contradicting defendants' coercion defense. Unlike Hitt, this is not a case in which the jury wrongly was led to believe that weapons belonged to the defendants when in fact the weapons belonged to someone else. Defendants conceded they manufactured and sold these weapons. We can say with fair assurance that, although the district court erred in allowing the display of the guns and silencers, the error was harmless.
 
 
 18
 4. Downward Adjustment for Acceptance of Responsibility.
 
 
 19
 Defendants allege that the district court erred in denying them downward departures on their sentences for acceptance of responsibility under U.S.S.G. 3E1.1. We review for clear error a district court's determination that a defendant has not established acceptance of responsibility. The district court's determination is entitled to great deference. United States v. Vance, 62 F.3d 1152, 1157 (9th Cir.1995).
 
 
 20
 A defendant is entitled to a two-level reduction in the offense level if he "clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." U.S.S.G. § 3E1.1 (1990). Conviction after a trial does not preclude a downward departure for acceptance of responsibility in situations in which the defendant "goes to trial to assert and preserve issues that do not relate to factual guilt [such as] to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct." U.S.S.G. § 3E1.1, application note 2.
 
 
 21
 Here, defendants challenged both the constitutionality of a statute and the applicability of the statute toward their conduct, which do not bear on acceptance of responsibility. But, at trial, Ronald Bascue also argued that he had been entrapped and had acted under duress. Ronald Bascue argued that the idea to manufacture machineguns had been another person's, not his, and that he had agreed to manufacture the guns only because of threats allegedly made to him by the undercover government agents. Ronald Bascue's position at trial was thus inconsistent with acceptance of responsibility--he blamed others for his crime. His defense was quite similar to that of the defendant in United States v. Molina, 934 F.2d 1440, 1450-51 (9th Cir.1991) because Bascue, like Molina, repeatedly contradicted the testimony of government witnesses at trial. We therefore conclude that here, as in Molina, the record contains "ample support for the conclusion that [the defendant] did not manifest the sort of affirmative acceptance of personal responsibility' that § 3E1.1 requires," notwithstanding Bascue's expressions of remorse after trial.
 
 
 22
 As for Robbie Bascue, although he did not testify at trial, his attorney also presented a duress defense. While it is true that a defense of duress and acceptance of responsibility are not mutually exclusive, when a defendant raises a duress defense at trial, he must clearly accept responsibility for his conduct and express remorse after trial. United States v. Johnson, 956 F.2d 904-05 (9th Cir.1992). Here, Robbie Bascue failed to express such remorse after trial. The district court found that Robbie Bascue had not made any statements before or after trial indicating an acceptance of responsibility. We conclude that the district court did not commit clear error in denying Robbie Bascue a reduction for acceptance of responsibility.
 
 
 23
 We recognize that both defendants initially entered guilty pleas in 1993 and that the 1993 Presentence Reports recommended reductions for acceptance of responsibility. But defendants' expressions of remorse in 1993 and the Presentence Reports' recommendations at that time are not controlling. What is at issue here is whether, viewing the events during and after the 1995 trial, the district court clearly erred in denying defendants reductions for acceptance of responsibility. The mere fact that the defendants did not recant their previous statements of remorse does not mean that they demonstrated to the district court that they continued to feel remorse. The burden was on the defendants to "clearly demonstrate [ ] recognition and affirmative acceptance of personal responsibility for [their] criminal conduct." U.S.S.G. § 3E1.1. The district court did not clearly err in finding that defendants had failed to demonstrate they merited a reduction.
 
 
 24
 5. Ronald Bascue--sentencing enhancement.
 
 
 25
 Ronald Bascue alleges that the government improperly manipulated the number of weapons involved in his offense and thus that the six level increase required by the Sentencing Guidelines for an offense involving fifty or more firearms was improper government "sentencing manipulation."
 
 
 26
 Bascue argues that the government undercover agent manipulated the number of guns sold. But the evidence at trial indicated that Bascue was willing to provide as many guns as the undercover agent wanted to buy, subject to restrictions on how quickly he could manufacture them and the financial resources he had available to purchase materials. The government cannot be said to have manipulated the number of guns sold just because Bascue used the money received from the government for the first delivery of guns to pay for the materials necessary to manufacture the second shipment. Bascue also argues that he was coerced into selling the government these guns. But the jury found otherwise. Therefore, the district court committed neither legal nor factual error in increasing Bascue's sentence based on the number of guns involved in the transactions.
 
 
 27
 For the foregoing reasons, we AFFIRM.
 
 
 
 *
 Ruggero J. Aldisert, Senior Judge, United States Court of Appeals for the Third Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 18 U.S.C. § 922(o) provides:
 (1) Except as provided in paragraph (2), it shall be unlawful for any person to transfer or possess a machinegun.
 (2) This subsection does not apply with respect to--
 (A) a transfer to or by, or possession by or under the authority of, the United States or any department or agency thereof or a State, or a department, agency, or political subdivision thereof; or
 (B) any lawful transfer or lawful possession of a machinegun that was lawfully possessed before the date this subsection takes effect.
 
 
 [2]
 18 U.S.C. § 925(a)(1) provides:
 The provisions of this chapter [regulating the sale of firearms] shall not apply with respect to the transportation, shipment, receipt, or importation of any firearm or ammunition imported for, sold or shipped to, or issued for the use of, the United States or any department or agency thereof or any State or any department, agency, or political subdivision thereof.