UNITED STATES of America,
Plaintiff–Appellee,

v.

Hugo CRUZ–GARCIA, aka Jose Montes–Ramirez, Defendant–Appellant.

No. 02–10275.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 14, 2003.

Filed Sept. 17, 2003.

Michael K. Powell, Assistant Federal Public Defender, Reno, NV, argued for the defendant-appellant. Franny Forsman joined him on the briefs.

Craig S. Denney, Assistant United States Attorney, Reno, NV, argued for the plaintiff-appellee. Daniel G. Bogden joined him on the briefs.

Before: KOZINSKI, GRABER and BERZON, Circuit Judges.

Opinion by Judge KOZINSKI; Concurrence by Judge GRABER.

KOZINSKI, Circuit Judge.

Did the district court abuse its discretion by excluding details of the prosecution's star witness's prior crimes?

## Facts

Defendant Hugo Cruz–Garcia and his brother-in-law, Juan Carlos Meza–Castro, were driving together on a highway outside Reno, Nevada, when they were pulled over for weaving. Suspicious of their nervous behavior and defendant's inability to produce a valid driver's license, the highway patrol trooper asked to search the car. Defendant consented to the search, which turned up over one hundred grams of heroin on the floor of the back seat, hidden in the pocket of Meza–Castro's jacket. It was later discovered that Meza–Castro had previously been convicted of selling heroin and cocaine to an undercover narcotics agent on six separate occasions, and was on probation at the time of the incident. Defendant had no prior drug-related convictions.

Both men were charged. Meza–Castro pleaded guilty to conspiracy to traffic heroin. During his plea hearing, he told the district court that he "bought [the heroin] and brought it" to Nevada after meeting some "guy" in a restaurant who offered him the drugs. He never mentioned defendant in his plea colloquy.

At defendant's trial, Meza–Castro testified that defendant was the drug dealer. He told the jury that he had watched defendant package the drugs in electrical tape before the trip and that he (Meza–Castro) was just along for the ride. Meza–Castro also testified that, on ten different occasions, defendant had told him to take the blame. He claimed that was why he had lied during his plea colloquy.

The prosecutor built his case around Meza–Castro's testimony. He argued that Meza–Castro was "dumb as a box of rocks," and thus could not have been the sole drug dealer; he needed defendant's help to pull off such a crime. To rebut this argument, defendant tried to present evidence of Meza–Castro's prior conviction, hoping to show that Meza–Castro was indeed capable of dealing drugs on his own. The government objected and the district court only allowed defendant to impeach Meza–Castro under Federal Rule of Evidence 609 by showing that he had been previously convicted; the court barred defendant from presenting the facts underlying Meza–Castro's conviction, apparently under Rule 404(b).[1]

---

1. The district court's ruling is opaque. Though the court referred to defendant's "404(b) evidence," it is difficult to tell whether its decision was based solely, if at all, on a 404(b) analysis. In ruling on defendant's in limine motion, the court announced:

> THE COURT: The defendant wishes to admit the codefendant witness's prior felony drug trafficking conviction and the underlying facts of that conviction as 404(b) evidence of other crimes, wrongs and acts. Certainly, if the witness takes the stand, the defendant may use the prior conviction for impeachment under 609–1, but, no, the defendant will not go into the underlying facts of the conviction.

> The government has offered to stipulate to the codefendant's prior drug conviction, and so I gather that's still the position of the government, Mr. Denney?

> MR. DENNEY: It is, your honor.

> THE COURT: All right.

When the issue came up again during Meza–Castro's cross-examination, the district court relied on its earlier ruling. Defense counsel reiterated his argument as to why the evidence should be admitted. The court responded, "I understand your position, I understand your position," but did not explain why it found that position unpersuasive. The district court never engaged on the record in any traditional 404(b) inquiry or 403 balancing. Nor did the court allude to its residual powers to exclude evidence that causes "undue delay," is a "waste of time" or results in "needless presentation of cumulative evidence." *See* Fed.R.Evid. 403. The only explanation the district court gave was, "I do not think that the government opened any door at all for that kind of inquiry."

The jury convicted defendant of conspiracy with intent to distribute, possession with intent to distribute and interstate travel in aid of racketeering. On appeal, defendant challenges the exclusion of the underlying details of Meza–Castro's conviction.

## Analysis

■ **1.** The Federal Rules of Evidence start from the proposition that "[a]ll relevant evidence is admissible." Fed.R.Evid. 402. Rule 404(b) makes an exception for "[e]vidence of other crimes, wrongs, or acts" where that evidence "prove[s] *only* criminal disposition." *United States v. Rocha*, 553 F.2d 615, 616 (9th Cir.1977). But we have held that Rule 404(b) is "one of inclusion," and if evidence of prior crimes bears on other relevant issues, 404(b) will not exclude it. *Id.; accord United States v. Sangrey*, 586 F.2d 1312, 1314 (9th Cir. 1978).

The government argues that the underlying facts of Meza–Castro's prior conviction were properly excluded because "Meza–Castro's knowledge and intent were not in question." But *defendant's* knowledge and intent certainly were. Indeed, whether defendant knew of the drugs in Meza–Castro's jacket pocket and intended to conspire with him to deal the drugs were the *only* issues in dispute: Both sides agreed that defendant and Meza–Castro were driving together, with defendant at the wheel; that they were stopped by a trooper who searched the car; and that the heroin was found in Meza–Castro's jacket, which was lying on the floor near the back seat. Meza–Castro had already pleaded guilty, so his complicity in the crime was established. The only question then was whether Meza–Castro was acting on his own or with defendant's help. It was the government's burden to prove that the two men conspired, and it

tried to do so by presenting evidence that Meza–Castro was not sharp enough to commit this crime alone, raising the inference that defendant must have been the mastermind.

The prosecutor pressed this point at every stage. During his opening, the prosecutor told the jury that Meza–Castro was ignorant: "[T]he government will tell you up front that Mr. Castro is not a very bright man. He has a fifth grade education, he's from Mexico, and he has a prior felony conviction for drugs." When questioning Meza–Castro, the prosecutor emphasized Meza–Castro's limited education. He summarized the evidence in his closing as follows:

> I've heard a phrase once said that someone that's really, really stupid is as dumb as a box of rocks, and the government would submit that Mr. Castro is in fact dumb as a box of rocks. He's a fool.
>
> . . . .
>
> . . . [B]ecause he is such a fool . . . he's not capable of pulling this whole thing off by himself.
>
> The evidence is that he needed [the defendant] to help him do it. The [defendant] asked him to, and, like a fool, he did it.

Meza–Castro's inability to pull off a drug deal by himself was the cornerstone of the prosecution's case.

Defense counsel, for his part, made every effort to explain that evidence of *how* Meza–Castro committed his prior drug crimes was relevant to the government's theory that he could not have acted alone. In responding to the government's objection to questions about Meza–Castro's use of a pager, defense counsel argued:

> I would establish that [Meza–Castro] had a pager in the car with him when he was coming to Reno, that he had a pager

in Reno, that he received pages in English from a CI, that he received pages from an undercover agent, that he connected sales, that he set the price ... that ... he is being portrayed to this jury as someone who does not understand consequences.

... [A]nd he's pretty sophisticated in these matters at this point.

Counsel also made an offer of proof, consisting of the criminal complaint against Meza–Castro, and an arrest report that thoroughly detailed Meza–Castro's prior drug transactions with the undercover detective who arrested him. Counsel explained how he planned to use this evidence: "[The government is] going to argue to the jury at the end on the relative knowledge and relative roles. They brought up the fact that he has limited ability, and I think that I can rebut that by direct evidence ... that he was sophisticated enough to conduct those sales." He continued: "And so that is my way to rebut the implication that since my client is present in the car, somebody else needed to help this man bring drugs and buy drugs since he goes back and forth between whether he did or he didn't on several different occasions."

▮ We are disadvantaged in reviewing the district court's decision because the court did not explain *why* it rejected defendant's proffer—whether it thought the evidence inadmissible under 404(b), under 403 or on some other basis.[2] It is clear, however, that the proffered evidence could not be properly excluded under 404(b) because it was relevant to a matter other than the witness's propensity to commit crime. *Rocha,* 553 F.2d at 616. Indeed, Meza–Castro's propensity was not even an issue in this case, because the jury already knew that he had been involved in the current crime—he had pleaded guilty to it, after all. Thus, the jury could not possibly have drawn the improper inference that Meza–Castro was more likely to have committed this crime because he had committed the earlier crime. The *only* thing the evidence could have shown is whether Meza–Castro had the smarts to act on his own. Rule 404(b) says other bad acts evidence may be admitted "for *other purposes, such as* proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed.R.Evid. 404(b) (emphasis added). As the emphasized text makes clear, this list is illustrative, not exhaustive. Whether Meza–Castro was intelligent and sophisticated enough to pull off a crime like this on his own was made the central issue by the prosecutor's theory of the case. It is precisely the kind of evidence 404(b) does not exclude.[3]

2. While district judges are not required to explain all of their evidentiary rulings, it makes our job easier when they do. It is particularly advisable for the court to give a reason in a situation like the one presented here, where defense counsel makes a substantial proffer and explains clearly the relevance and importance of the evidence to his client's case. While the absence of a reasoned decision on an evidentiary matter that arises in the midst of trial may be excusable, it is far less so where the issue is raised by written in limine motion. By giving an explanation for its ruling, the district court improves the decisionmaking process in two ways. First, when a district court gives us the benefit of its reasoning, we are better able to accord it the full deference to which it is due. More importantly, in attempting to articulate a reason for its ruling, the court may discover that "it won't track"—that the explanation just doesn't make sense—in which case the court may change its view of the matter, avoiding error and the burden it imposes on everyone involved.

3. That Meza–Castro was a witness, rather than the defendant, further militates in favor of inclusion. Though 404(b) does apply to witnesses and third parties, *United States v.*

■ **2.** Even though evidence is admissible under 404(b), it may nonetheless be excluded under Rule 403's balancing test, which weighs the "probative value" of the evidence against the "danger of unfair prejudice."[4] Though the district court failed to explain whether it considered 403 in excluding the details of Meza–Castro's prior conviction, we presume it did. We note that the district court must already have engaged in a similar balancing when it admitted Meza–Castro's prior conviction under Rule 609. *See* Fed.R.Evid. 609 ("[E]vidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403 ...."). Because, pursuant to the ruling, the jury was told about Meza–Castro's prior drug conviction, the only question left is whether the government suffered unfair prejudice by further admission of the facts underlying that conviction.

We don't see how it could have. Meza–Castro had already been revealed to the jury as a criminal, a drug dealer, a conspirator. He had admitted to participating in the crime defendant was being tried for,

and that he had a prior six-count drug conviction. Thus, his credibility had been thoroughly compromised. And, while showing that Meza–Castro was not just a drug dealer, but a sophisticated one, might have harmed the government's case, it would not have harmed it *unfairly*. Parties always introduce evidence that will do damage to the other side's case; that's the very point of a trial. That evidence may decimate an opponent's case is no ground for its exclusion under 403. The rule excludes only evidence where the prejudice is "unfair"—that is, based on something *other* than its persuasive weight. In *United States v. Hitt*, 981 F.2d 422 (9th Cir.1992), for example, we found unfair prejudice when the government introduced a photograph of a dozen guns and other weapons taken at defendant's residence. We noted that "[r]ightly or wrongly, many people view weapons, especially guns, with fear and distrust" and that the photograph might play on the jurors' "irrational fears and prejudices." *Id.* at 424. Here, there was no risk that introducing evidence about *how* Meza–Castro committed his pri-

---

*McCourt*, 925 F.2d 1229, 1235 (9th Cir.1991), we have suggested that "courts should indulge the accused when the defendant seeks to offer prior crimes evidence of a third person for an issue pertinent to the defense other than propensity." *Id.* at 1236. This is because 404(b) is often thought to protect a defendant from being tried "for who he is," not for "what he did." *United States v. Bradley*, 5 F.3d 1317, 1320 (9th Cir.1993) (quoting *United States v. Hodges*, 770 F.2d 1475, 1479 (9th Cir.1985)) (internal quotation marks omitted). The "guilt or innocence of the accused must be established by evidence relevant to the particular offense being tried, not by showing that the defendant has engaged in other acts of wrongdoing." *Id.* (quoting *Hodges*, 770 F.2d at 1479) (internal quotation marks omitted). Where evidence of prior crimes pertains to a witness, this is not an issue. At most, a jury might discredit his testimony—a consideration Rule 609 already takes into account.

**4.** Our precedents have "incorporated Rule 403's probative value/unfair prejudice balancing requirement into the Rule 404(b) inquiry." *United States v. Mayans*, 17 F.3d 1174, 1183 (9th Cir.1994) (citing *United States v. Brown*, 880 F.2d 1012, 1014 (9th Cir.1989) and *United States v. Sarault*, 840 F.2d 1479, 1485 (9th Cir.1988)). It strikes us as unnecessary to "incorporate" 403 particularly into 404(b), because all otherwise admissible evidence is nevertheless subject to 403 balancing. Thus 403 is, in a sense, incorporated into *all* other rules of evidence. Perhaps our cases mean to emphasize the importance of the 403 balancing in 404(b) cases. *See Mayans*, 17 F.3d at 1183 (citing *Huddleston v. United States*, 485 U.S. 681, 691, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988)). Whether the 403 inquiry is done separate from, or as part of, the 404(b) analysis, makes no substantive difference.

or crimes would have played on the irrational fears or prejudices of the jurors, who already knew he had been convicted of those crimes. The only way this evidence could have prejudiced the government's case is by undermining the prosecutor's theory that Meza–Castro was too dumb to act on his own. This is not the type of prejudice against which 403 protects.

Finally, the evidence of Meza–Castro's other crimes could not have been excluded under any of the district court's residual powers, such as the power to avoid "undue delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Evid. 403. The evidence clearly was not cumulative—it gave the jury information it learned from no other source. Nor was it unduly burdensome or time-consuming. It would, at most, have expanded the cross-examination of Meza–Castro, and allowed defendant to call one additional witness—the detective whose investigation led to Meza–Castro's prior conviction. The district court abused its discretion in excluding the evidence.

■■■ 3. An error at trial is harmless only if there is " 'fair assurance' that the verdict was not substantially swayed by the error." *United States v. Bauer*, 132 F.3d 504, 510 (9th Cir.1997) (citation omit-

ted). In determining whether the error here was harmless, we consider the extent to which the evidence in question would have undermined the government's case. *See United States v. Vizcarra–Martinez*, 66 F.3d 1006, 1017 (9th Cir.1995) (holding evidence wrongly admitted at trial was not harmless where the "government relied heavily" upon it in its "opening argument, closing argument, and rebuttal"). The record shows that the prosecutor relied extensively on the "box of rocks" argument throughout the trial. He opened his case by describing Meza–Castro as ignorant, and emphasized this point as Meza–Castro testified. His closing argument connected Meza–Castro's ignorance with the government's primary theory—that Meza–Castro was incapable of acting alone. Without the excluded evidence, defendant had no effective way to rebut the government's most compelling argument against him.[5]

The details of Meza–Castro's prior conviction could well have persuaded the jury that Meza–Castro was capable of acting alone. On six separate occasions, he had sold cocaine and heroin to undercover police officers. In these transactions, Meza–Castro generally made the arrangements himself, took the money and delivered the drugs. At times he came to the drug deal alone; when others accompanied him, Meza–Castro nevertheless took the lead in

**5.** We need not decide whether the prosecutor here committed misconduct, though we do find the circumstances troubling. Our doubt about the prosecutor's behavior stems from the interaction of two circumstances, each of which might well have been appropriate, standing alone. First, the prosecutor argued against admission of the 404(b) evidence, as he was perfectly entitled to do. While we find this argument unpersuasive, it was not frivolous and the prosecutor had every right to make it. Second, however, the prosecutor argued to the jury that Meza–Castro was too dumb to carry out the crime by himself. This too would have been entirely appropriate, had the jury been told the details of Meza–Castro's prior drug dealings; the prosecutor might

then have argued that the prior transaction was far different and therefore did not refute the "box of rocks" hypothesis. But, having argued to exclude this evidence, the prosecutor found himself in a position of having information the jury did not. In such circumstances, the prosecutor must be particularly careful not to argue to the jury inferences he knows to be untrue in light of the evidence excluded. *See United States v. Kojayan*, 8 F.3d 1315, 1323 (9th Cir.1993). To put the matter in its simplest form, the prosecutor here argued that Meza–Castro was too dumb to deal drugs on his own. Yet the prosecutor well knew (as the jury did not) that Meza–Castro had done precisely that. This is closer to the line than we like to see prosecutors get.

carrying out the sale. And he demonstrated a certain degree of sophistication in his dealings with the undercover agent. For example, he used a pager to arrange pick-ups and used only his middle name to identify himself. He was selective about where the transaction would take place: He once moved the meeting point at the last minute from a K–Mart to a nearby laundromat, perhaps as a counter-surveillance measure. On another occasion, he drove his car a distance after the undercover detective got into it, perhaps also to avoid surveillance. The detective also noted that Meza–Castro once arrived with the drug balloons stored in his mouth, rather than out in the open. The detective in charge of the investigation would have testified to all of this and perhaps provided additional details. Whether this evidence would have painted Meza–Castro as a sophisticated drug dealer is something the lawyers could have debated in their summations. But this evidence does clearly show that Meza–Castro could have more than held his own against a box of rocks.

Because the evidence excluded was carefully detailed and highly probative of Meza–Castro's ability to act on his own, it could well have cast a reasonable doubt on the theory that defendant must have been involved. We therefore cannot say with fair assurance that its exclusion was harmless. *Bauer*, 132 F.3d at 510. Accordingly, we must reverse defendant's conviction and remand for a new trial.

**REVERSED AND REMANDED.**

GRABER, Circuit Judge, specially concurring:

Although I agree that Defendant's conviction must be reversed, I reach that conclusion on a narrower ground.

The district court's error was in failing to apply Federal Rule of Evidence 404(b) at all. As the majority recognizes, the court confusingly mentioned Rule 404(b) in passing but failed to analyze Defendant's proposed evidence under that rule, including its incorporated requirement for Rule 403 balancing.[1] Had the district court done so, it *might* have found the evidence admissible. And, had the court found the evidence admissible, the outcome of the trial might have been affected for the reasons explained by the majority.

However, in my view it is premature, and potentially unjustified, to decide that the evidence *would* have been admissible for sure after a full Rule 404(b) and Rule 403 analysis. Typically, when we conclude that a district court used an incorrect Rule 404(b)/Rule 403 analysis, or none at all, we remand for the district court to consider the matter in the first instance using the correct analysis. *See, e.g., Blind–Doan v. Sanders*, 291 F.3d 1079, 1083 (9th Cir. 2002) (when a district court excluded evidence under Rules 404(b) and 415 but did not undertake the full analysis required, reversing and remanding with the caveat that, "[i]n the first instance, the balancing must be undertaken by the trial court"); *United States v. Mayans*, 17 F.3d 1174, 1183–84 (9th Cir.1994) (when a district court admitted evidence under Rule 404(b) but its analysis was infirm, declining to "decide whether, if the trial court had made the requisite inquiries under Rules 404(b) and 403, the prior acts evidence might still have been admissible" and leaving "the 404(b)/403 question for the district court to decide in the first instance on retrial").

---

**1.** I do not agree with the majority at 956, that the district court's implicit Rule 403 balancing under Rule 609 demonstrates an implicit Rule 403 balancing under Rule 404(b); the nature of the evidence involved, and therefore the nature of the balancing to be done, is different.

Additionally, in a new trial the prosecutor may not rely on the same theory. Under a different theory the evidence in question may be quite irrelevant.

Accordingly, I concur in the judgment but not in the reasoning of the majority.