UNITED STATES of America, Plaintiff—Appellee,

v.

Anthony ALIZONDO, Defendant—Appellant.

No. 03–50124.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 3, 2004.*

Decided March 8, 2004.

---

Fed. R.App. P. 34(a)(2).

Ronald L. Cheng, Esq., Susan J. De-Witt, Esq., Office of the U.S. Attorney, Los Angeles, CA, for Plaintiff–Appellee.

Alissa Sawano Peterson, Irvine, CA, for Defendant–Appellant.

Before: BROWNING, REINHARDT, and WARDLAW, Circuit Judges.

## MEMORANDUM **

Anthony Alizondo challenges his sentence for (1) conspiracy to possess and use counterfeit and unauthorized access devices and to possess items stolen from the U.S. mails, in violation of 18 U.S.C. §§ 371, 1029(a), and 1708; (2) trafficking in and use of unauthorized access devices, in violation of 18 U.S.C. § 1029(a)(2); and (3) possession of document-making devices with intent to use them to produce false identification, in violation of 18 U.S.C. § 1028(a)(5). The district court first sentenced Alizondo to a 46–month prison term—at the low end of the applicable 46–63 month range. We vacated that sentence after Alizondo and the Government agreed that the district court's use of the 2000 edition of the Sentencing Guidelines had resulted in an *ex post facto* violation. On remand, the district court sentenced Alizondo to the same prison term, 46 months, at the mid-point of the 41–51 month range. The court also ordered a higher restitution amount—$6,384,839.71 rather than the initial $3,852,086.14—based on the Government's new evidence of the amount of loss for which Alizondo was responsible.[1] We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742, and we AFFIRM.

## I.

■ Alizondo contends that the district judge acted vindictively at re-sentencing, imposing a harsher sentence as retribution for Alizondo's exercise of his right to appeal. *See North Carolina v. Pearce,* 395

U.S. 711, 725–26, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); *Alabama v. Smith,* 490 U.S. 794, 798, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989). "[W]henever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear." *Pearce,* 395 U.S. at 726; *see United States v. Garcia–Guizar,* 234 F.3d 483, 490 (9th Cir.2000) (*Pearce* presumption of vindictiveness also applies on remand for re-sentencing). The presumption "must be rebutted by objective information ... justifying the increased sentence." *Alabama v. Smith,* 490 U.S. 794, 799, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989) (internal quotation marks omitted).

We presume, but need not and therefore do not decide, that a higher loss amount, a mid-range rather than low-end sentence, and higher restitution amount constitute a "more severe sentence" under *Pearce* and, therefore, that they trigger its presumption of vindictiveness. The *Pearce* presumption is rebutted in this case, because the reasons for the more severe sentence do "affirmatively appear." At re-sentencing, the district court properly entertained both Alizondo's and the Government's challenges to its original loss finding, and found that the Government had proved a higher amount. "Objective information" newly available to the district court at re-sentencing can rebut the *Pearce* vindictiveness presumption, and the Government's new evidence of the amount of loss does so here.

## II.

■ Alizondo contends that the district court should have required the Govern-

---

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. On remand, the district court applied the 1998 edition of the Sentencing Guidelines, with the parties' agreement. All references in this disposition to the Guidelines are to the 1998 edition.

ment to prove the amount of loss for purposes of enhancement under United States Sentencing Guidelines ("USSG") § 2F1.1(b)(1) by clear and convincing evidence. We reject this argument.

"Generally, factual findings underlying sentence enhancements must be supported by a preponderance of the evidence." *United States v. Riley,* 335 F.3d 919, 925 (9th Cir.2003). "When, however, the combined impact of the contested sentencing enhancements is disproportionate relative to the offense of conviction, the district court must apply the clear and convincing evidence standard of proof." *Id.* This Court reviews *de novo* the district court's interpretation of the Guidelines, including its identification of the standard of proof required for a particular factual finding. *United States v. Allen,* 341 F.3d 870, 892 (9th Cir.2003).

We rejected Alizondo's argument in the analogous case of *United States v. Riley,* 335 F.3d 919 (9th Cir.2003). Like Alizondo, Riley pled guilty to conspiracy to commit fraud, and his sentence was enhanced pursuant to USSG § 2F1.1(b)(1). *Id.* at 923. Riley argued on appeal that the district court should have required clear and convincing evidence of the loss amount. *Id.* at 925. The *Riley* court examined six factors identified by our cases as especially significant for determining whether an enhancement must be proven by clear and convincing evidence. *Id.* at 925–26; *see also United States v. Jordan,* 256 F.3d 922, 927–29 (9th Cir.2001) (extracting the factors from precedents). Affirming the district court's application of the preponderance standard, the *Riley* court reasoned, "this enhancement is based on the extent of the conduct to which Riley pled guilty (the amount of loss intended by the conspiracy's fraud).…" *Riley,* 335 F.3d at 926.

The same reasoning applies to Alizondo. Section 2F1.1(b)(1) measures the harm the defendant inflicts, or intends to inflict, by fraud. It calibrates the seriousness of the penalty with the gravity of the fraud of which the defendant was found guilty (through plea or trial). Alizondo's 14–offense–level enhancement was "based on the extent of the conduct to which [he] pled guilty." *Riley,* 335 F.3d at 926. The enhancement brought Alizondo's sentence into line with his crime, making the sentence proportionate, not "disproportionate[,] to the offense." *Id.* at 925. The district court therefore correctly declined to require the Government to prove the loss by clear and convincing evidence.

## III.

Alizondo lastly argues that the Government's attribution to him of various categories of losses was supported by insufficient evidence. The amount of loss for purposes of § 2F1.1(b)(1) is a factual finding underlying the sentence, which we review for clear error. *United States v. Scrivener,* 189 F.3d 944, 949 (9th Cir.1999). "A district court's evaluation of the reliability of evidence is reviewed for an abuse of discretion." *Id.* The district court's loss finding involved no clear error, and its crediting of the Government's evidence was not an abuse of discretion.

The district court did not clearly err in finding check fraud to be within the scope of Alizondo's agreement with the co-conspirators. Alizondo stipulated in his plea agreement that he "obtained biographical information on more than 10,000 individuals, which he supplied to coconspirators to use [in credit card fraud] and to cash stolen checks." These factual stipulations were read aloud at the change of plea hearing and Alizondo confirmed they were

correct.[2] Furthermore, Alizondo admitted in the plea agreement to producing fake identification documents, which foreseeably could be used for cashing stolen checks.

■ The district court also did not commit clear error in including the 1996 losses. It did not state whether it attributed the 1996 losses to Alizondo as harm flowing from actions of his co-conspirators after he joined the conspiracy, *see* USSG § 1B1.3(a)(1)(B), or as harm flowing from his own actions, *see* USSG § 1B1.3(a)(1)(A). Neither basis, though, would have been clearly erroneous. The evidence is equivocal on whether Alizondo joined the conspiracy in 1996 or 1997, so the district court could have found that he joined in 1996. *See Anderson v. Bessemer City*, 470 U.S. 564, 574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."). Alternatively, the district court could have included the 1996 losses as harm flowing from Alizondo's own actions; it noted that the case agent had concluded that Alizondo had accessed profile information in 1996.

■ Finally, the Government provided sufficient evidence that Alizondo was responsible for $6,384,839.71 in losses, and the district court did not abuse its discretion in crediting this evidence. While the amount of loss must be proven by a preponderance of the evidence, *Riley*, 335 F.3d at 926, " '[t]he court need only make a reasonable estimate of the loss, given the available information,' " *Scrivener*, 189 F.3d at 949 (quoting USSG § 2F1.1, Commentary, Application Note 9). We have upheld loss findings for purposes of § 2F1.1 that were derived by multiplying an estimate of the average individual loss by an estimate of the number of losses, yielding only a rough approximation of the actual total loss. *See, e.g., Scrivener*, 189 F.3d at 949–50; *United States v. Watson*, 118 F.3d 1315, 1319 (9th Cir.1997). The Government took a more precise approach in this case, linking Alizondo to approximately 1,000 individual losses by matching people who had been defrauded with those on whom Alizondo had obtained profiles. This is sufficient, even though some entries lacked a loss date, profile access date, or Social Security number. The Government also satisfactorily explained why some loss dates preceded profile access dates.

The district court's sentence and restitution order are AFFIRMED.

---

2. Even if, as he stated at plea colloquy, he did not possess stolen mail, he was responsible for his co-conspirators' theft of checks if check fraud fell within the scope of their agreement.