UNITED STATES of America,
Plaintiff—Appellee,

v.

Randy VALMER, Defendant—
Appellant.

No. 06–10061.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 9, 2007.

Filed Aug. 23, 2007.

Robert L. Ellman, Esq., Brian J. Quarles, Esq., Patrick M. Walsh, Esq., Office of the U.S. Attorney, Las Vegas, NV, for Plaintiff–Appellee.

Michael K. Powell, Esq., Dan Maloney, Federal Public Defender's Office, Reno, NV, for Defendant–Appellant.

Before: SCHROEDER, Chief Circuit Judge, CLIFTON, Circuit Judge, and

SCHIAVELLI *, District Judge.

## MEMORANDUM **

On at least six separate occasions, Appellant, Randy Valmer ("Valmer") sold methamphetamine to an undercover officer who was initially introduced to Valmer by a confidential informant ("CI") known only as "James."[1] On September 30, 2005, a jury convicted Valmer on one count of conspiracy to distribute methamphetamine and six counts of distribution of methamphetamine. The district court sentenced Valmer to twenty years on each count and ordered that the sentences run concurrently.

Valmer appeals his conviction and seeks a new trial claiming the lower court erred in not ordering the Government to disclose information about the CI, while at the same time allowing the Government to highlight the absence of information about the CI during closing statement. Valmer also seeks to be resentenced based upon his contention the district court should have reduced his sentence as a result of (1) improper sentencing factor manipulation and (2) his acceptance of responsibility.

We have jurisdiction under 28 U.S.C. § 1291, and 18 U.S.C. § 3742(a) and we affirm.

### Valmer's Request for a New Trial

*(1) Valmer's Motion to Compel Discovery of the CI was Properly Denied*

■ The defendant has the burden to prove the need for disclosure of a CI. *United States v. Sanchez,* 908 F.2d 1443, 1451 (9th Cir.1990); *United States v.*

*Williams,* 898 F.2d 1400, 1402 (9th Cir. 1990). Here, the lower court did not abuse its discretion in concluding Valmer failed to meet the standard, adopted by the Supreme Court in *Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), to compel discovery of information concerning a CI.

In a pretrial motion to compel discovery before the magistrate judge, Valmer sought information relating to the CI, "James," who introduced Valmer to the undercover police officer. Specifically, Appellant sought the CI's identity, criminal record, agreement(s) with the Government, whereabouts, bank statements, instructions from law enforcement concerning acceptable or non-acceptable activity, and requested an interview with the informant prior to trial. Valmer contends the information and interview were necessary to his defense at trial.

Prior to trial, on July 15, 2005, the magistrate judge denied Valmer's motion because Valmer failed to demonstrate the information sought was "relevant and helpful to the defense of an accused or [was] essential to a fair determination of a cause." *Roviaro,* 353 U.S. at 60–61, 77 S.Ct. 623.[2] Valmer did not file an objection to the magistrate's order denying the motion to compel. Consequently, the district court was not called upon to consider this issue until trial.

On the first day of trial, Valmer requested reconsideration of the magistrate's denial of his motion to compel information regarding the CI. The Government ar-

---

* The Honorable George P. Schiavelli, United States District Judge for the Central District of California, sitting by designation.

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

1. The parties are familiar with the facts so we do not discuss them in detail here.

2. Valmer's intent to actually raise an entrapment defense was "vague" and "unexplained" when the motion was before the magistrate judge. (*See* EOR 19).

gued the information concerning the identity and background of the CI was irrelevant because the actual crimes for which Valmer was indicted all occurred after the CI introduced the undercover officer to Valmer, and the CI did not participate in the criminal activity. The district court denied Valmer's motion on two grounds. First, because the magistrate's order was not timely appealed, and second, because the information sought was irrelevant. The district court's denial was *without prejudice* to the motion being renewed if evidence of entrapment were raised at trial and the CI became relevant to Valmer's entrapment defense.

The district court's denial of Valmer's motion to compel was not an abuse of discretion because the informant "James" was not significantly involved in Valmer's methamphetamine transactions,[3] and the Government had a strong interest in not disclosing confidential information on the informant. *See United States v. Gonzalo Beltran,* 915 F.2d 487 (9th Cir.1990).

In *Gonzalo Beltran,* this Circuit specified three factors a court must consider to determine when to order disclosure of identifying information regarding a CI pursuant to a defendant's Fifth and Sixth Amendment rights: "(1) the degree of the informant's involvement in the criminal activity; (2) the relationship between the defendant's asserted defense and the likely testimony of the informant; and (3) the government's interest in non-disclosure." 915 F.2d 487, 488–89.

As to the first factor, the CI, "James," was not involved in Valmer's criminal activity to any great degree because he was only present during the first of the seven meetings between Valmer and the undercover police officer, and that meeting was not the subject of any of the charges subsequently included in the indictment. The charges resulted from the ensuing six meetings where James was not present. Thus, Valmer dealt directly with the undercover officer on six separate occasions during a fourteen-day period with no involvement of the CI.[4] Accordingly, Valmer, who was admittedly heavily involved in the drug trade as a "user," committed the charged offenses with no direct participation by the CI, and therefore, the CI was not involved in Valmer's criminal activity to a large degree.

*Roviaro* is distinguishable because, there, the Court determined the conviction ultimately depended on the informant, rather than the police officers who testified at trial, because the informant, not the officers, was present and participated in the alleged conduct. 353 U.S. at 64, 77 S.Ct. 623 ("This is a case where the Government's informer was the sole participant, other than the accused, in the transaction charged.") Here, however, the undercover police officer testified about the specifics of Valmer's drug crimes from personal knowledge without reference to anything the CI, "James," said or did.

The conclusion reached by the Eleventh Circuit in *United States v. Tenorio–Angel,* 756 F.2d 1505, 1509 (11th Cir.1985), which, in turn, formed the basis for the Ninth Circuit's adoption of the three-factor test

---

3. As discussed *infra,* this distinguishes this case from *Roviaro* where the CI "was the sole participant, other than the accused, in the transaction charged." 353 U.S. at 64, 77 S.Ct. 623.

4. We also note the Government's argument Valmer was predisposed to commit drug crimes is bolstered by his shifting explanations that he was at first motivated to sell drugs for "James" but later felt sympathy for the undercover officer's need for drugs.

in *Gonzalo Beltran*,[5] is applicable here: "We do not find that the informant played a pivotal role in the drug transactions with respect to the appellant's participation. The informant merely introduced appellant to the agents.... This level of participation does not mandate disclosure." 756 F.2d at 1511.[6]

As to the third prong of *Gonzalo Beltran*, the district court did not err in accepting the Government's argument for the need to protect the CI's identity. While Valmer knew the CI, he also testified he knew little about him. Valmer knew him only as "James" and had taken drugs with him on over eighty different occasions. Once such a person, who is known to a defendant, is identified as a CI, the need for protection of identifying information about that person becomes much more pronounced. Moreover, the Government also indicated the CI had been used in other cases. This also created a significant need for non-disclosure.

Thus, the first and third prongs of *Gonzalo Beltran* strongly support the ruling below precluding discovery.

As to the second prong, as the dissent correctly points out, we do not know what relationship would have been shown between the CI's testimony and Valmer's defense. However, *Roviaro*'s progeny make clear that a defendant is not *automatically* entitled to discovery of a CI simply by asserting an entrapment defense. If this were the case, the defendant would be able to effectively eviscerate the burden of proof on the need for disclosure of a CI by simply asserting an entrapment defense, no matter how weak. Yet, the burden always remains on the defendant. *See Sanchez,* 908 F.2d at 1451; *see also Williams,* 898 F.2d at 1402. Furthermore, such a result would have a devastating impact on the willingness of CIs, who are important tools in law enforcement's arsenal of weapons against the increasingly sophisticated tools of the drug trade, to come forward and testify.

While there is an allure to requiring the district court to hold an *in camera* hearing to find out the relationship between the CI and the Government, it is not this court's job to do that which should have been done by the defense at trial. As indicated, *supra,* the district court denied the discovery without prejudice. The issue was not re-raised by the defense,[7] nor did the defense request any kind of *in camera* hearing by the trial court to determine the CI's relation with the Government. Moreover, notwithstanding the judge's indication he might allow an offer of proof to be made, none was requested by the defense.

In sum, in light of the defendant's extensive and systematic involvement with drugs, the lack of any significant participation of the CI in the charged offenses, and the need to protect the CI from possible retaliation, the district court did not err in denying the discovery regarding the CI's identity.

### (2) Valmer Waived Any Claim of Error Relating to the Government's Closing Argument

■ During trial, Valmer testified that he was a drug user and an addict, but not a drug trafficker. He had asserted an entrapment defense by detailing what

---

5. *See Gonzalo Beltran, 915 F.2d at 489.*

6. Additionally, the CI in *Tenorio–Angel* was arguably more involved in the criminal activity than "James." *See* 756 F.2d at 1506.

7. Unlike in *United States v. Staufer,* 38 F.3d 1103, 1109 (9th Cir.1994), cited by the dissent, where the defendant "renewed his motion to disclose the informant's identity and thus preserved the issue for appeal."

"James" told him to induce him to sell drugs to the undercover officer. Valmer claimed that he only sold methamphetamine to the undercover officer because "James" asked him to. Valmer testified that he and "James" were friends, socialized frequently, and took drugs together. Valmer also asserted "James" asked him to sell drugs to the undercover officer, "Joe," as a favor to him because "James" was going through hard times, and by selling to "Joe," Valmer would be helping "James." The district court allowed this testimony and only prevented Valmer from testifying on points involving double hearsay about what "James" said "Joe" said. Thus, Valmer presented his entrapment defense to the jury.

In order to prove he was entrapped, Valmer had to show: (1) the government induced him to commit the crime and (2) he was not predisposed to commit it. *See United States v. Gurolla*, 333 F.3d 944, 951 (9th Cir.2003).

During the Government's closing argument and reply, counsel made reference to the fact that nothing was known about "James." The Government argued Valmer had not shown the CI to be a government agent, and therefore, even if "James" had induced Valmer to sell methamphetamine, Valmer could not prove the first prong—"*government* inducement." There was no defense objection to the references to "James" in the Government's closing or rebuttal arguments.

The Government's argument was problematic because the district court had, of course, prevented the defense from obtaining discovery of the relationship. Thus, only the prosecution had the information necessary to show whether or not "James" was a government agent. But, there was no defense objection.

As this Court stated in *United States v. Cruz–Garcia*, 344 F.3d 951 (9th Cir.2003),

"[t]his is closer to the line than we like to see prosecutors get." Nevertheless, the prosecutor's actions, however inappropriate, are less egregious than those of the prosecutor in *Cruz–Garcia* who made misrepresentations in closing argument, *and* also in opening statement and during the examination of witnesses. Thus, this Court ordered a new trial in *Cruz–Garcia* because the excluded evidence was made a centerpiece of the prosecution's case. By contrast, here, Valmer, not the prosecution, first mentioned the CI, and made "James" part of the case.

Because the Government's actions in this case did not rise to the level of plain error and because Valmer did not object to the references during closing argument, he is not entitled to a new trial. It is significant that Valmer did not object during closing argument and it is this fact, among others, that distinguishes this case from *United States v. Kojayan*, 8 F.3d 1315, 1319, n. 8 (9th Cir.1993) (convictions vacated and case remanded where defense counsel objected at least three times to the prosecutor's closing argument).

In light of the deferential standard of review on appeal, and the possible miscues of the defense during trial, we cannot say the district court erred. Accordingly, Valmer is not entitled to a new trial based on the Government's statements during its closing argument.

### Valmer's Request to be Resentenced

The district court did not err in refusing to reduce Valmer's sentence because of (1) sentencing factor manipulation or (2) acceptance of responsibility.

#### (1) There Was No Sentencing Factor Manipulation

■ Appellant argues that the district court erroneously failed to consider a departure from the guidelines sentence

based on sentencing entrapment and therefore he must be resentenced. Valmer claims that the Government had enough evidence to charge him after one drug deal, but instead of arresting him then, "piled on" five more transactions only to increase his sentence. Appellant's sentencing entrapment argument then morphs into a separate claim that the district court erred in applying the sentencing guidelines as mandatory post-*United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).

The district court did not plainly err for failing to consider sentencing entrapment because, as the evidence showed: (1) Valmer unhesitatingly sold methamphetamine on six separate occasions, and (2) the district court properly considered the sentencing factors required by 18 U.S.C. § 3553 as advisory.

### (2) No Acceptance of Responsibility

■ Appellant argues that the district court erroneously denied him an adjustment for acceptance of responsibility, and therefore he must be resentenced. However, the district court's recognition of Valmer's failure to express remorse or contrition was not plain error. Instead, the district court correctly concluded that Valmer's conduct was incompatible with an acceptance of responsibility. *See United States v. Scrivener*, 189 F.3d 944, 948 (9th Cir.1999) (finding defendant's attempts to minimize his own involvement and blame his son were inconsistent with acceptance of responsibility); *United States v. Marquardt*, 949 F.2d 283, 285 (9th Cir.1991) (per curiam) (affirming refusal to apply downward adjustment where defendant indicated that he had not intended to violate the law and that the authorities "steered" him toward child pornography).

Therefore, Valmer is not entitled to be resentenced.

Accordingly, the judgment of the district court is **AFFIRMED.**

CLIFTON, Circuit Judge, dissenting:

An entrapment defense is usually tough to sell to a jury, particularly when the defendant has sold drugs to an undercover detective on seven separate occasions, and when the defendant doesn't know the last name of the person who allegedly had so much influence over him so as to be able to get him to commit a crime he was not predisposed to commit. That was the predicament of defendant Randy Valmer in this case, and so Valmer may well have deserved the guilty verdict he received.

Valmer is still entitled to defend himself by arguing entrapment, though, and in this case it appears to me both that he was denied relevant information to which he was entitled and that the Government took unfair advantage of that during its closing argument. I thus respectfully dissent.

The heart of my disagreement with the majority centers on its appraisal of the second of the three factors we identified in *United States v. Gonzalo Beltran*, 915 F.2d 487, 489 (9th Cir.1990), for deciding whether to disclose information regarding a confidential informant ("CI"): "the relationship between the defendant's asserted defense and the likely testimony of the informant." When Valmer first sought information about the CI through a motion to compel, it may have been appropriate for the magistrate judge to deny the motion, because at that point the relevance of the CI's identity was not particularly clear. But by the time of trial, Valmer had settled on an entrapment defense. At trial, the detective involved testified that he did not know what sort of relationship the CI had with Valmer, and Valmer took the stand to explain the inducements the CI had offered him. At this point, when the

issue was once again raised, the relevance of the information was unmistakable, and the apparent reliance on the prior denial by the magistrate judge was erroneous.[8]

Although the Government and the majority focus on the CI's absence from the six transactions for which Valmer was charged, by that point during the trial it was clear that Valmer's defense theory related not to what happened *during* the six transactions, but to the alleged inducements by the CI that came *before*, which, according to Valmer, led him to engage in the charged conduct. True, the cases where divulging CI information has been deemed necessary involved informants who were witnesses to the alleged illegal transaction, *see Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957); *United States v. Miramon,* 443 F.2d 361 (9th Cir.1971); *Lopez–Hernandez v. United States,* 394 F.2d 820 (9th Cir. 1968), but this issue cannot be resolved by such a mechanical rule, *Roviaro,* 353 U.S. at 62, 77 S.Ct. 623 ("We believe that no fixed rule with respect to disclosure is justifiable."). As is made clear by the analysis used in these cases, the question is not simply whether the CI was present at the transactions the Government elected to charge, but whether the informant's testimony might be critically helpful to the defense in some way. *See also United States v. Staufer,* 38 F.3d 1103, 1109 (9th Cir.1994); *Gonzalo Beltran,* 915 F.2d at

489; *United States v. Sai Keung Wong,* 886 F.2d 252, 256–57 (9th Cir.1989). Because Valmer's entrapment theory was premised on pre-transaction inducement, not on disputing what transpired during the charged transactions, the focus of the disclosure inquiry also shifted: the question became the extent to which the CI could help the defense shed light on those earlier events.

Analyzing Valmer's ability to make out each component of his entrapment defense makes it clear that information on the CI was "relevant and helpful to the defense ... [and was] essential to a fair determination of a cause," *Roviaro,* 353 U.S. at 60–61, 77 S.Ct. 623. As to inducement, the withholding of all information regarding the CI left Valmer with only one way to get his story into the trial: through his own testimony. In taking this route, Valmer exposed himself to attacks on his credibility. The Government argued to the jury that they should not believe the "word of [a] convicted felon, an admitted drug addict, an admitted liar.... [The defense] said on several occasions, the drug dealers don't trust him, but [the defense] wants you to accept his word. I said there's nothing that's been demonstrated that warrants accepting what he said." Without any information on the CI, Valmer's main avenue for corroborating his testimony as to the CI's behavior was foreclosed. *See Miramon,* 443 F.2d at 362

---

8. The issue arose mid-trial in an oblique manner, coming to the fore when the Government's hearsay objection, during Valmer's testimony, evolved into a claim that the defense was attempting to re-litigate the CI information disclosure issue. During the sidebar, the Government pressed the position that the previous denial was a final ruling that could not be reconsidered, even though the district court's previous denial was "without prejudice if ... through either their witnesses or through your witnesses, ... you have some predicate to show [the court] that [the CI] was

an inducing agent and therefore we need to know the background of [the CI]." Instead of correcting the Government's mistake, the defense proceeded on this erroneous premise and responded to the district court's suggestion—that the defense's line of questioning was foreclosed by law of the case—by trying to distinguish its current questioning from its previous disclosure request. Although the parties' confusion, in which the defense acquiesced, clouded the issue, the CI's relevance to Valmer's defense was clear by this juncture.

("Had [the informant] been known and testified, he might have corroborated [the defendant's] story, at least in part.").

But it is not the weakness of Valmer's case on inducement that fully illustrates the extent to which the Government's non-cooperation undermined his defense—on inducement, Valmer at least had his own testimony. On the government agent requirement, Valmer had nothing. "Only a government official or agent can entrap a defendant." *United States v. Gurolla,* 333 F.3d 944, 954 n. 15 (9th Cir.2003). Yet, because Valmer did not have independent knowledge of the relationship between the CI and the government, he didn't have a version of those facts to present; he had nothing more to say on agency, an essential part of his defense, beyond noting the applicability of the title of "confidential informant."

The vulnerability this gap created in Valmer's defense was demonstrated by the argument made by the Government in closing that Valmer could not prove entrapment because he could not prove that the CI, "James," was a government agent. First, the Government affirmatively asserted in its initial closing argument that James was not a government agent. In the rebuttal portion of closing argument, the prosecutor went further:

> [Defense counsel] also mentions James, where is James, the confidential informant. Well, of course, as the evidence [has] demonstrated, James was not involved in these drug buys. And importantly, he's not a government agent. We know nothing about him. There's nothing to support he was an agent. And in fact, the instructions [say] ... it is not enough for someone [to have] previously acted or been paid as an informant by the other state or federal agencies. We don't know the status. We don't know if he's an agent

or not, that's the whole point. [He] couldn't have been entrapped by James, we don't know anything about James. And he definitely wasn't involved in any of the six drug deals.

This argument highlights the gaping hole in Valmer's entrapment defense, but it was hardly Valmer's fault that he didn't better inform the jury, because the Government had decided to keep Valmer in the dark.

The Government's closing statements not only pointed out how critical James might have been to Valmer's defense, but also compounded the problem. The majority describes the Government's closing argument as being closer to the line than we like to see. I think that argument went well over the line.

The prosecutor's initial affirmative statement that James was not a government agent at least leaned over the line, because there wasn't evidence before the court to support that argument. Having refused to disclose anything about James (besides acknowledging that he had been a confidential informant, which supported Valmer's argument), the only evidence the prosecutor cited in making this argument was that the undercover detective testified that James had nothing to do with the six charged drug deals. That was a legitimate basis for arguing that the CI's role was limited and that Valmer was predisposed to commit the offense because he did it when James wasn't around. But the fact that he wasn't there for the last six deals did not mean that he hadn't acted for the Government to set up the first deal or by playing any other role. There was simply no evidence to support the Government's argument on this point. Since jurors would reasonably assume that the prosecutor would know whether or not someone was a government agent, by making this assertion the prosecutor appeared to be

arguing from outside the record and engaging in a form of vouching.

The prosecutor's rebuttal comment pushed much too far over the line. It simply wasn't true, as the prosecutor argued, that "we don't know anything about James." The Government knew more about him. Indeed, the reason the defendant, the court, and the jury couldn't know anything more about him was because the Government had refused to provide any more information about James or his relationship with the authorities.

It is unnecessary to decide whether these statements alone would entitle Valmer to relief, however. The statements reveal the emphasis the prosecutor placed on the government agent issue, which convinces me, even if a plain error standard is applied,[9] that Valmer was erroneously denied an opportunity to make out his defense. It may well be that James could not have offered any support for Valmer's entrapment defense, but given that there was not even an *in camera* review of that question, the current conviction should not stand. *Cf. Sai Keung Wong*, 886 F.2d at 255–57, 256 (upholding a denial of CI disclosure since, assuming that the defendants had made the necessary threshold showing to reach this stage, review of the evidence produced *in camera* gave "no indication that the informant could have provided any testimony that would have helped the defense"). I would reverse the conviction and remand for a new trial,

keeping in mind that on remand, the district court may elect to conduct an *in camera* review of any evidence James might have to offer the defense.[10]

I respectfully dissent.

---

9. As noted above, although the issue arose mid-trial, the defense failed, in the midst of the confusion surrounding the prejudice of the district court's previous ruling, to directly request information about the CI at a time when the need for that information became apparent. *See* Fed.R.Crim.P. 52(b); *United States v. Recio*, 371 F.3d 1093, 1099–1100 (9th Cir.2004).

10. Although on this record the district court erred in preventing the defense from obtain-

ing any information about the CI, such an *in camera* review may bring additional revelations as to how much—or how little—help James could provide. Such information would impact the ultimate resolution of the court's weighing of the public interest in protecting CIs against Valmer's ability to defend himself, *see Gonzalo Beltran*, 915 F.2d at 488.

